24-1810-cv
*Zesty Paws LLC v. Nutramax Lab'ys, Inc.*

# United States Court of Appeals
## for the Second Circuit

_____

August Term 2024

(Argued: June 25, 2025   Decided: October 3, 2025)

No. 24-1810

_____

ZESTY PAWS LLC,

*Plaintiff-Counter-Defendant-Appellant*,

— v. —

NUTRAMAX LABORATORIES, INC., NUTRAMAX LABORATORIES VETERINARY
SCIENCES, INC.,

*Defendants-Third-Party-Plaintiffs-Counter-Claimants-Appellees*,

— v. —

HEALTH AND HAPPINESS (H&H) US INTERNATIONAL INC.,

*Third-Party-Defendant-Appellant*.[*]

_____

---

[*] The Clerk of the Court is respectfully directed to amend the caption on this Court's docket to be consistent with the caption on this order.

Before: BIANCO, MENASHI, and LEE, *Circuit Judges*.

Plaintiff-Counter-Defendant-Appellant Zesty Paws LLC and Third-Party-Defendant-Appellant Health and Happiness (H&H) US International Inc. (together, "Zesty Paws") appeal from the district court's order granting Defendants-Third-Party-Plaintiffs-Counter-Claimants-Appellees Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc.'s (together, "Nutramax") motion for a preliminary injunction enjoining Zesty Paws from advertising itself as the #1 brand of pet supplements sold in the United States. The district court found that Nutramax was likely to succeed on its false advertising claims under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), because Nutramax is a brand, and it is undisputed that the combined sales of Nutramax pet supplement products exceeded the combined sales of Zesty Paws pet supplement products. The district court therefore concluded that Zesty Paws's advertising claims were likely literally false. On appeal, Zesty Paws argues that the district court erred in its likelihood of success determination because its #1 brand advertising claims were not unambiguously false given that they were at least reasonably susceptible to the interpretation that they compared Zesty Paws's combined sales to the sales of each individual brand of Nutramax's pet supplement products, such as Cosequin and Dasuquin. We conclude that the district court's likelihood of success determination was erroneous because it did not properly apply the literal falsity standard.

Accordingly, we **VACATE** the district court's order granting the preliminary injunction and **REMAND** for further proceedings.

Judge Menashi concurs in the judgment in a separate opinion.

FOR PLAINTIFF-COUNTER-DEFENDANT-APPELLANT AND THIRD-PARTY-DEFENDANT-APPELLANT:
MICHAEL E. BERN (Blake E. Stafford, Peter A. Prindiville, Latham & Watkins LLP, Washington, District of Columbia; Steven N. Feldman, Latham & Watkins LLP, New York,

New York; Matthew W. Walch, Latham & Watkins LLP, Chicago, Illinois, *on the brief*) Latham & Watkins LLP, Washington, District of Columbia.

FOR DEFENDANTS-THIRD-PARTY-PLAINTIFFS-COUNTER-CLAIMANTS-APPELLEES: KIRK T. BRADLEY (Jason D. Rosenberg, John E. Stephenson, Jr., Alan F. Pryor, Uly S. Gunn, Mary G. Gallagher, Alston & Bird LLP, Atlanta, Georgia; Natalie C. Clayton, Alston & Bird LLP, New York, New York, *on the brief*), Alston & Bird, LLP, Charlotte, North Carolina.

JOSEPH F. BIANCO, *Circuit Judge*:

Plaintiff-Counter-Defendant-Appellant Zesty Paws LLC and Third-Party-Defendant-Appellant Health and Happiness (H&H) US International Inc. (together, "Zesty Paws") appeal from the district court's order granting Defendants-Third-Party-Plaintiffs-Counter-Claimants-Appellees Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc.'s (together, "Nutramax") motion for a preliminary injunction enjoining Zesty Paws from advertising itself as the #1 brand of pet supplements sold in the United States. The district court found that Nutramax was likely to succeed on its false advertising claims under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), because Nutramax is a

3

brand, and it is undisputed that the combined sales of Nutramax pet supplement products exceeded the combined sales of Zesty Paws pet supplement products. The district court therefore concluded that Zesty Paws's advertising claims were likely literally false. On appeal, Zesty Paws argues that the district court erred in its likelihood of success determination because its #1 brand advertising claims were not unambiguously false given that they were at least reasonably susceptible to the interpretation that they compared Zesty Paws's combined sales to the sales of each individual brand of Nutramax's pet supplement products, such as Cosequin and Dasuquin. We conclude that the district court's likelihood of success determination was erroneous because it did not properly apply the literal falsity standard.

Accordingly, we **VACATE** the district court's order granting the preliminary injunction and **REMAND** for further proceedings consistent with this opinion.

Judge Menashi concurs in the judgment in a separate opinion.

### BACKGROUND

Zesty Paws and Nutramax are direct competitors in the pet supplements market. Both companies sell a range of different pet supplement products for cats

and dogs. Zesty Paws's products include, among others: Mobility Bites (joint health), Probiotic Bites (gut health), Calming Bites (behavioral health), and Aller-Immune Bites (immune health). Nutramax sells a similar range of products: Cosequin (joint health), Dasuquin (joint health), Proviable (gut health), Solliquin (behavioral health), and Imuquin (immune health).

Nutramax alleged that in July 2023, Zesty Paws began advertising itself as the #1 selling pet supplement brand in the United States. Specifically, Zesty Paws touted itself as (1) the "#1 Brand of Pet Supplements in the USA," (2) the "USA's #1 Brand of Pet Supplements," and (3) the "#1 Selling Pet Supplements Brand in the USA" (collectively, the "#1 Claims"). App'x at 71.

Nutramax's position is that Zesty Paws's #1 Claims are false because it is undisputed that the combined sales of Nutramax pet supplement products exceeded the combined sales of Zesty Paws pet supplement products at all relevant times. On December 13, 2023, after Nutramax demanded that Zesty Paws cease making the #1 Claims, Zesty Paws filed the instant lawsuit seeking a declaratory judgment that the #1 Claims are not false or misleading under federal or state law. In its complaint, Zesty Paws asserted that a reasonable consumer reading the #1 Claims in context would understand Nutramax's individual brands

of pet supplement products, such as Cosequin and Dasuquin, as the relevant brands to which the #1 Claims compared. Zesty Paws alleged, and it is undisputed, that the sales of each of Nutramax's individual products do not exceed Zesty Paws's aggregate product sales. In response to the lawsuit, Nutramax asserted counterclaims against Zesty Paws for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), New York General Business Law §§ 349 and 350-a, and New York common law, and moved for a preliminary injunction.[1] After expedited discovery, the district court held an evidentiary hearing in April 2024, where the parties called seven witnesses, including four expert witnesses, and introduced nearly one hundred exhibits.

On June 4, 2024, the district court granted Nutramax's motion for a preliminary injunction. The district court concluded that Nutramax was likely to succeed on its Lanham Act false advertising claim because: (1) Nutramax was a brand, Nutramax sold more pet supplements than Zesty Paws, and therefore the #1 Claims were literally false; (2) the #1 Claims were material because they were likely to influence consumer purchasing decisions; and (3) the #1 Claims were a

---

[1] While the preliminary injunction motion was pending, Zesty Paws expanded its use of the #1 Claims into Costco stores. Nutramax filed a motion for a temporary restraining order, seeking to restrain Zesty Paws from using the #1 Claims in Costco stores, which the district court granted.

cause of actual or likely injury to Nutramax. Having concluded that Nutramax was likely to succeed on its false advertising claim, the district court applied the Lanham Act's presumption of irreparable harm under 15 U.S.C. § 1116(a), which Zesty Paws did not rebut. Finally, the district court found that the balance of hardships weighed in Nutramax's favor, and that granting the preliminary injunction would not disserve the public interest. This interlocutory appeal followed.

## DISCUSSION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "These requirements are demanding, for a preliminary injunction is an extraordinary remedy never awarded as of right." *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024) (alteration adopted) (internal quotation marks and citation omitted).

"We review de novo the [d]istrict [c]ourt's legal conclusions in deciding to grant a motion for a preliminary injunction, but review its ultimate decision to

issue the injunction for abuse of discretion." *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020) (internal quotation marks and citations omitted). "A district court abuses or exceeds the discretion accorded to it when (1) its decision rests on an error of law . . . or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 79 (2d Cir. 2024) (internal quotation marks and citation omitted). "[A] decision rests on an error of law either because it applies the wrong legal principle, or because it incorrectly applies the right legal principle." *City of New York by & through FDNY v. Henriquez*, 98 F.4th 402, 411 (2d Cir. 2024) (internal quotation marks and citations omitted).

"To prevail on a Lanham Act false advertising claim, a plaintiff must establish that the challenged message is (1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury to the plaintiff." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016). Zesty Paws challenges the district court's determination that Nutramax is likely to show that the #1 Claims are literally false.

"To establish literal falsity, a plaintiff must show that the advertisement either makes an express statement that is false or a statement that is false by necessary implication, meaning that the advertisement's words or images, considered in context, necessarily and *unambiguously* imply a false message." *Id.* (emphasis added) (internal quotation marks and citation omitted). In other words, "if the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007). At all times, our inquiry is into "what reasonable consumers would understand [the advertisement] to mean." *Church & Dwight Co.*, 843 F.3d at 66.

We conclude that the district court abused its discretion by issuing the preliminary injunction because it did not properly apply the above-referenced legal standard in conducting its likelihood of success analysis on the literal falsity claim. In analyzing whether the #1 Claims are literally false, the district court focused exclusively on whether Nutramax is a brand. *See Zesty Paws LLC v. Nutramax Lab'ys, Inc.*, No. 23-cv-10849 (LGS), 2024 WL 2853622, at *3–5 (S.D.N.Y. June 4, 2024). After determining that Nutramax is in fact a brand, the district court simply concluded, *ipso facto*, that the #1 Claims must be literally false. *See id.* at *5

9

("Because Nutramax has shown a likelihood of proving that Nutramax is a brand, Nutramax is also likely to show that the #1 Claims are literally false . . . ."). However, finding that Nutramax is a brand was the beginning, not the end, of the relevant inquiry. To show that it will likely succeed on its literal falsity claim, Nutramax had the burden of showing not only that the #1 Claims could have referred to Nutramax, but that, to a reasonable consumer, they unambiguously did so. Put another way, Nutramax must show that the #1 Claims are not also susceptible to another reasonable interpretation such as Zesty Paws's proffered interpretation—namely, that the #1 Claims compared the Zesty Paws brand to only the individual brands of pet supplements Nutramax sells, such as Cosequin and Dasuquin.

Here, the district court's opinion does not explain why Zesty Paws's alternative interpretation would be unreasonable to a reasonable consumer. Indeed, the district court did not acknowledge the legal principle that an advertisement must not be "susceptible to more than one reasonable interpretation" to be unambiguously false, *Time Warner Cable, Inc.*, 497 F.3d at 158, nor did it make that requisite finding in its decision. Moreover, the district court did not sufficiently address much of Zesty Paws's evidence supporting the

10

reasonableness of the interpretation it advances. For example, the district court did not discuss evidence that Nutramax's product packaging featured Dasuquin and Cosequin labels in larger font, while simultaneously displaying the Nutramax label in a smaller font, referring to Nutramax as the "Company," or relegating the Nutramax label to the back of the product packaging. The district court similarly did not address internal Nutramax documents showing that Nutramax employees viewed Nutramax's individual named products, not Nutramax, as its principal brands. Instead, the district court cast aside Zesty Paws's arguments because they "critique[d] the strength of Nutramax's brand rather than assess[ed] whether Nutramax is a brand at all." *Zesty Paws LLC*, 2024 WL 2853622, at *4.

However, in our view, Zesty Paws's arguments cannot be so narrowly construed. The strength (or lack thereof) of the Nutramax brand is probative as to whether a reasonable consumer could understand the #1 Claims to compare the Zesty Paws brand to only Nutramax's individual product brands, rather than to Nutramax itself. That is the core of the literal falsity inquiry here because, to ultimately succeed on that theory of liability, Nutramax must demonstrate that the #1 Claims are so unambiguous that a reasonable consumer could not share Zesty Paws's interpretation. In sum, because the district court failed to properly analyze

11

the evidence under the applicable legal standard in concluding that the #1 Claims are likely literally false, the district court therefore abused its discretion in entering the preliminary injunction. Accordingly, we conclude a remand is required.[2]

## CONCLUSION

For the foregoing reasons, we **VACATE** the district court's order granting the preliminary injunction and **REMAND** for further proceedings consistent with this opinion.

---

[2]  Nutramax argues that we can affirm the district court's likelihood of success determination on the alternative basis that the #1 Claims are impliedly false and misleading. When the district court entered its temporary restraining order, it found that "Zesty Paws' #1 Claims are misleading because they compare the entire line of Zesty Paws brand products to individual single products sold under the Nutramax brand, and they consider only retail sales and exclude veterinary sales." App'x at 285. On appeal, Nutramax argues that such a finding is also warranted in connection with the preliminary injunction "because the evidence showed that consumers understand the #1 Claims to make an 'apples-to-apples' comparison about brands and the 'pet supplements' (plural) they offer, when the #1 Claims *actually* make an 'apples-to-oranges' comparison between all pet supplements (plural) from Zesty Paws and merely any *one* pet supplement (singular) from Nutramax." Appellee's Br. at 44. However, in its preliminary injunction decision, the district court did not revisit the implied falsity issue because it found the #1 Claims are likely literally false. In the absence of any analysis on that issue by the district court, including the requisite factual findings, we decline to address the issue here in the first instance. Of course, on remand, Nutramax is free to pursue the implied falsity claim in connection with its preliminary injunction motion.

MENASHI, *Circuit Judge*, concurring in the judgment:

I agree that the district court abused its discretion by issuing the preliminary injunction because it did not apply the correct standard for literal falsity. But I would remand for the district court to address only the possibility of implied falsity. On this record, the #1 Claims cannot be considered literally false.

"To establish literal falsity, a plaintiff must show that the advertisement either makes an express statement that is false or a statement that is 'false by necessary implication,' meaning that the advertisement's 'words or images, considered in context, necessarily and unambiguously imply a false message.'" *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, 843 F.3d 48, 65 (2d Cir. 2016) (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007)). "A message can only be literally false if it is unambiguous." *Id.* "Therefore, if the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." *Time Warner Cable*, 497 F.3d at 158.

In this case, the term "brand" in the #1 Claims is susceptible to more than one reasonable interpretation. For that reason, the #1 Claims cannot be literally false.

The parties follow different branding strategies. Zesty Paws employs a "branded house" strategy. It markets all of its pet supplement products under the single Zesty Paws brand with descriptive product names such as "Zesty Paws 8-in-1 Bites for Dogs" and "Zesty Paws Hip & Joint Mobility Bites Soft Chews for Dogs." App'x 36-37 (¶¶ 18-19). Nutramax follows a "house of brands" strategy. It maintains more than a dozen distinct pet supplement

brands including Cosequin, Dasuquin, and Proviable. *See id.* at 39 (¶ 27), 46 (¶ 47). Each Nutramax brand maintains its own packaging design, website, and marketing plan. And the Nutramax brands cover multiple products. There are "Dasuquin Sprinkle Capsules for Cats" as well as "Dasuquin with MSM Soft Chews." *Id.* at 39 (¶ 28). There are "Cosequin Minis Maximum Strength with MSM Plus Omega-3s Soft Chews" as well as "Cosequin Maximum Strength Plus MSM Chewable Tablets." *Id.* (¶ 29).

Even if it would be reasonable to regard Nutramax itself as a brand—and to understand the #1 Claims to compare all Zesty Paws products to all Nutramax products—the record forecloses the conclusion that the #1 Claims are susceptible only to that interpretation. There is no question that consumers could reasonably understand the #1 Claims to compare the Zesty Paws brand to competing product brands such as Dasuquin and Cosequin. Nutramax's own marketing materials distinguish between these "brands" and the parent "company" Nutramax. The packaging for Cosequin prominently identifies Cosequin as the "#1 Veterinarian Recommended *Brand*." *Id.* at 338 (emphasis added). The Nutramax name appears nowhere near that assertion but only in small print on the back of the bottle. *See id.* The packaging for Dasuquin identifies Dasuquin as the "#1 Joint Health *Brand* Recommended by Veterinarians." *Id.* at 456 (emphasis added). The bag includes a Nutramax logo in smaller print at the top, but it specifically refers to Nutramax as the "#1 Veterinarian Recommended Supplement *Company*." *Id.* (emphasis added).

Nutramax's documents reinforce this understanding. Nutramax referred to its "house of brand[s]," a portfolio of "16 brands" with "1 national brand of scale (Cosequin)." *Id*. at 1022, 1025. Nutramax did not appear to consider the corporate name to be a

national brand; its internal analyses identified Cosequin and Dasuquin as brands that compete against Zesty Paws and admitted that Zesty Paws "holds the #1 brand spot in supplements." *Id.* at 948.

On this record, no reasonable decisionmaker could conclude that "brand" as used in the #1 Claims unambiguously refers to Nutramax as a whole. "At the very least," the "inconsistency reveals that there is more than one way to view the issue." *City of New York v. Henriquez*, 98 F.4th 402, 413 (2d Cir. 2024).

While the district court did not apply the correct standard for literal falsity, the record makes clear that the #1 Claims cannot meet that standard. *See Time Warner Cable*, 497 F.3d at 158. I would vacate the judgment of the district court and remand for it to decide in the first instance whether Nutramax has a likelihood of establishing the implied falsity of the #1 Claims. Because the majority entertains the possibility that the #1 Claims might still be literally false, I concur only in the judgment.